**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary L. Taylor,               ) | No. CV-07-0149-PHX-FJM |
|                               ) | |
|         Plaintiff,            ) | **ORDER** |
|                               ) | |
| vs.                           ) | |
|                               ) | |
| Michael J. Astrue, Commissioner, Social ) | |
| Security Administration,      ) | |
|                               ) | |
|         Defendant.            ) | |
|                               ) | |

This is an action for judicial review of an administrative decision denying Social Security disability benefits. The court has before it plaintiff's motion for summary judgment (doc. 15), statement of facts (doc. 16), and supporting memorandum (doc. 17). The court also has before it defendant's cross-motion for summary judgment (doc. 21), statement of facts (doc. 22), notice of errata (doc. 23), and plaintiff's response (doc. 26).

**I**

Plaintiff is a fifty-three-year-old high school graduate whose former jobs include sander, construction crew helper, delivery driver, custodian, and security guard. Plaintiff is in good physical health, and there is little evidence of mental health problems prior to a "breakdown" on May 7, 2004. On that date, plaintiff held a knife to his throat and threatened suicide. Initially, he was treated as an outpatient with anti-depressant and anti-psychotic

medication. Then, from May 14 to June 1, 2004, plaintiff was voluntarily hospitalized. After discharge, plaintiff was treated as an outpatient with medication and counseling through ValueOptions, a managed care company.

Plaintiff applied for Social Security disability insurance benefits and supplemental security income payments on May 24, 2004, claiming an onset date of May 7, 2004. The application was denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on September 1, 2005. After the hearing, the ALJ received a medical impairment report on plaintiff's condition from Dr. Francisco Neufeld at ValueOptions. Finding discrepancy between the report and the record as a whole, the ALJ subpoenaed Dr. Neufeld to testify at a supplemental hearing on April 4, 2006, but he did not appear. The ALJ issued a decision on June 29, 2006, denying benefits. The appeals council denied review on November 21, 2006. Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the ALJ's decision.

**II**

"The Commissioner's decision to deny benefits will be set aside only if it is based on legal error or is not supported by substantial evidence." Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). Substantial evidence is more than a scintilla but less than a preponderance. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ conducted the five-step sequential evaluation set out in 20 C.F.R. §§ 404.1520 and 416.920.[1] If at any step in this evaluation the claimant is found disabled or not disabled, the inquiry ends. Plaintiff satisfied step one, because he was not performing substantial gainful work. 20 C.F.R § 404.1520(a)(4)(i).

At step two, the ALJ determines whether a claimant has a medically determinable impairment that is "severe" under the Regulations and that will result in death or will last at least twelve months. Id. §§ 404.1520(a)(4)(ii), 404.1509. To be "severe" an impairment

---

[1] For simplicity, hereinafter we cite the regulations that correspond to disability determination for insurance benefits only, as the five-step sequential evaluations for insurance benefits and supplemental security income payments mirror one another.

- 2 -

must significantly limit the claimant's ability to perform basic work activities. Id. § 404.1520(c). The ALJ determined that plaintiff suffers a medically determinable mental impairment ("psychotic disorder") that caused marked restrictions from May through December 2004, but significantly improved beginning in January 2005. Thus, the ALJ concluded that plaintiff did not have a severe impairment that had lasted or was likely to last twelve months and was therefore not disabled.

Plaintiff contends that the ALJ erred at step two. He also contends that "the ALJ's failure to set forth a detailed step three analysis is reversible error." Plaintiff's Motion at 6. The ALJ was not required to present a step-three analysis, because he did not reach it. Once a claimant is found disabled or not disabled at any particular step, the inquiry ends. The ALJ concluded at step two that plaintiff was not disabled. Therefore, our review is necessarily confined to step two. We affirm the ALJ's decision.

## III

Plaintiff contends that the ALJ erred in disregarding his "subjective complaint testimony" without performing a credibility analysis. Id. at 7. An ALJ must specifically address a claimant's "subjective symptom testimony" if the claimant has shown a medical impairment that could reasonably cause such symptoms. Smolen v. Chater, 80 F.3d 1273, 1281–82 (9th Cir. 1996); 20 C.F.R. § 404.1529.

First, plaintiff "testified that his psychiatric impairment precludes him from sustaining regular work." Plaintiff's Motion at 17. That is not symptom testimony, but a conclusion reserved for the ALJ based on all the evidence. See 20 C.F.R. § 404.1527(e)(1). Second, plaintiff testified that he believes he would unintentionally injure himself or someone on a job site. Admin. Record at 538. However, the ALJ cited the November 15, 2004, assessment by nurse practitioner Vanessa Curry, which reported that plaintiff had not experienced a psychotic episode since starting his medication, that he was not significantly limited in most work-related mental activities, and that he was capable of normal social interaction. Id. at 187–90. The ALJ also noted that there was "no evidence of any episodes of decompensation in a work or work like setting." Id. at 23.

- 3 -

Plaintiff also testified that he is unable to function independently. Admin. Record at 541; Plaintiff's Motion at 17. Again, this is more plaintiff's conclusion than symptom testimony. In any event, the ALJ presented ample contrary evidence, noting that claimant maintains a neat and clean appearance, shops for food, rides the bus, goes out walking, and manages a checkbook. Admin. Record at 23. Plaintiff has the concentration to read and watch television and also spends time with his grandchildren. Id. Plaintiff also testified that he assists with housework and does not need to be reminded to take his medication. Admin. Record at 542. We conclude there was no error in the treatment of plaintiff's testimony.

Plaintiff also contends that it was error for the ALJ to disregard a report completed by plaintiff's wife describing his daily limitations. Id. at 100. The ALJ clearly considered evidence of plaintiff's "restrictions in activities of daily living and social functioning." Id. at 23. The ALJ does not specifically refer to Mrs. Taylor's report, but it would be harmless error even if it were not considered. The report, dated August 23, 2004, is not inconsistent with the ALJ's conclusion: Plaintiff had "marked limitations" from May 2004 through December 2004, but no more than mild deficiencies after January 2005.

**IV**

Next, plaintiff contends that the ALJ erred in evaluating medical source opinions. As mentioned above, the ALJ relied in part on the medical impairment report completed on November 15, 2004, by Vanessa Curry, a mental health nurse practitioner at ValueOptions. Though the ALJ generally agreed with Curry's assessment, he rejected her opinion that plaintiff could not work 40 hours a week. Id. at 22. Plaintiff contends that it was error for the ALJ to accept portions of the assessment and reject others.

We conclude that substantial evidence supported the decision of the ALJ to reject part of the assessment. The ALJ explained that Curry's opinion on plaintiff's ability to work a full week is not otherwise supported by the record and appears to be based solely on plaintiff's subjective statements. Id. at 22–23. Alongside the opinion, Curry wrote, "Tires out easily" and "Somedays I just don't feel good." Id. at 189. Furthermore, whether a claimant is capable of full-time work is a question reserved for the ALJ based on all the

- 4 -

evidence. 20 C.F.R. § 404.1527(e)(1). At the same time, it was permissible for the ALJ to reject part of Curry's report yet rely on the remainder. See Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989).

The ALJ's step-two determination was also based in part on the opinion of medical expert Dr. Edward Jasinski, who reviewed the record and testified at plaintiff's hearing on September 1, 2005. An ALJ may rely on a non-treating, non-examining physician's opinion when it is supported by the record. Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999). Here, the ALJ essentially adopted Dr. Jasinski's opinion that in May 2004 plaintiff suffered a serious psychotic break that was successfully managed with medication, such that plaintiff had demonstrated only mild limitations since January 2005. We find this conclusion supported by the record, including the majority of nurse practitioner Curry's assessment.

However, plaintiff's main challenge to Dr. Jasinski's opinion is that it was based only on the record available at the time of the first administrative hearing on September 1, 2005. Plaintiff subsequently submitted treatment notes from ValueOptions covering the period July 2005 through March 2006. In April 2006, a supplemental hearing was held at which Dr. Jasinski did not participate. Plaintiff contends that this was error: "Instead of proffering [the new] records to [Dr. Jasinski] to ascertain whether same would influence the conclusion expressed at [the first] hearing, the ALJ simply denies benefits without making any further attempt to contact the consultant." Plaintiff's Motion at 10–11.

The ALJ understood and agreed with Dr. Jasinski's testimony of September 1, 2005, on the severity of plaintiff's condition based on the available records. But Dr. Jasinski's opinion was not crucial to the ALJ's decision. Plaintiff provides no authority for the contention that the ALJ was required to recontact Dr. Jasinski to elicit the consultant's opinion on later-added records.[2] It is clear that the ALJ himself examined the new records, Admin. Record at 24, and therefore made his decision based on all the evidence.

---

[2] Plaintiff cites S.S.R. 96-5p, which is inapposite. It provides that an ALJ should attempt to recontact treating sources who give opinions not supported by the evidence on issues reserved to the Commissioner.

- 5 -

Plaintiff's remaining contentions concern a medical impairment report completed by Dr. Francisco Neufeld of ValueOptions on September 29, 2005—*after* the administrative hearing. Admin. Record at 441. Dr. Neufeld reported that plaintiff's "present symptoms" included anxiety, social withdrawal, paranoid thoughts, suspiciousness, fear, insecurity, and difficulty concentrating. He assessed plaintiff's limitations in all work-related categories as moderate or severe. The ALJ subpoenaed Dr. Neufeld to attend a supplemental hearing on April 4, 2006, but he did not appear.

In his decision, the ALJ addressed the report without further input from Dr. Neufeld. The ALJ recognized that the opinions of treating physicians are given special weight and concluded that Dr. Neufeld was plaintiff's treating physician in 2004. Admin. Record at 24; see also id. at 200 (treatment record signed by Dr. Neufeld dated June 2, 2004). However, Dr. Neufeld's name disappears from the record. The ALJ concluded that by January 2005, Dr. Neufeld was no longer a treating physician. We agree. Even if he were, however, the ALJ gave specific, legitimate reason for rejecting his report. See Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). The report appears to reflect plaintiff's condition in 2004, when Dr. Neufeld was actually seeing plaintiff, and does not reflect the improvements clearly apparent in the record.

For example, at the hearing on September 1, 2005, plaintiff said he felt "stabilized" on his medication and said the extent of his counseling was a single thirty-minute meeting once a month with Curry, which suggests the medication was controlling his symptoms. Id. at 539, 543. According to treatment notes from September 6, 2005, plaintiff was alert, oriented, cooperative, and his mood was "euthymic" (meaning balanced). He denied suffering any delusions or hallucinations and was not a threat to himself or others. Id. at 458. It was noted that plaintiff "[o]nly speaks of lawsuit during appointment, as with every other appointment." Id. On November 30, 2005, plaintiff reported his symptoms as non-existent. Id. at 474.

Despite plaintiff's contentions, the ALJ did not reject Dr. Neufeld's assessment "simply because the doctor did not appear at the claimant's hearing." Plaintiff's Response

- 6 -

at 5. The assessment was clearly contradicted by the record. Plaintiff also contends that the ALJ erred by not doing more to contact Dr. Neufeld, that the subpoena was improperly served, and that the "ALJ's failure to fully develop the record vitiates the step 2 determination." Id. at 6. These contentions are without merit. The ALJ made more than reasonable efforts to develop the record; his rejection of Dr. Neufeld's assessment was properly based on the record as it stood.

## V

In his response, plaintiff refers to incidents that occurred after the ALJ issued his decision and attaches elliptical treatment records that were not made a part of the administrative record. Plaintiff provides no authority for our considering this information, and we decline to do so. Our role is to review the administrative decision. Plaintiff does not suggest how these records, which post-date the termination of his administrative proceeding, are relevant to that decision. He only contends that the records would be relevant if the ALJ had further extended the process by scheduling a third supplemental hearing due to "Dr. Neufeld's non-appearance at the second hearing as well as a question as to record completeness." Plaintiff's Response at 6–7. A third hearing was unnecessary for reasons we have discussed. Plaintiff is of course free to file a new claim for Social Security disability benefits with a new onset date to which these records might be relevant.

## VI

For the foregoing reasons, **IT HEREBY IS ORDERED DENYING** plaintiff's motion for summary judgment (doc. 15) and **GRANTING** defendant's cross-motion for summary judgment (doc. 21).

DATED this 7th day of April, 2008.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge